IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARIO L.,[1] ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 20 C 3846 |
| v. ) | |
| ) | Magistrate Judge |
| KILOLO KIJAKAZI, Acting ) | Maria Valdez |
| Commissioner of Social Security,[2] ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Mario L.'s claim for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion to reverse the Commissioner's decision [Doc. No. 20] is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 27] is granted.

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Plaintiff only by his first name and the first initial of his last name.

[2] Kilolo Kijakazi has been substituted for her predecessor pursuant to Federal Rule of Civil Procedure 25(d).

## BACKGROUND

### I. PROCEDURAL HISTORY

On April 11, 2014, Plaintiff filed a claim for DIB, alleging disability since July 1, 2010. The claim was denied initially and upon reconsideration, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on August 16, 2016. On November 10, 2016, the ALJ denied Plaintiff's claim for DIB, finding him not disabled under the Social Security Act. Plaintiff then appealed to this Court, and, on August 9, 2018, pursuant to an agreed motion, the Court remanded the matter and instructed the ALJ to reassess the medical evidence, including medical opinion evidence; reevaluate Plaintiff's residual functional capacity, as appropriate; obtain medical expert ("ME") and/or new vocational expert ("VE") testimony; and issue a new decision.

After remand, the Social Security Administration Appeals Council directed the ALJ to reassess the medical evidence, including medical opinion evidence; obtain evidence from an ME related to the nature and severity of Plaintiff's functional limitations, as necessary; give further consideration to Plaintiff's maximum residual functional capacity; and, if warranted, obtain supplemental evidence from a VE to clarify the effect of the assessed limitations on Plaintiff's occupational base. Another hearing before the same ALJ was held on February 7, 2019. Plaintiff personally appeared and testified at the hearing and was represented by counsel. An ME and a VE also testified. On April 17, 2019, the ALJ again denied Plaintiff's claim for DIB, finding him not disabled under the Act. The

Appeals Council then denied Plaintiff's request for review, leaving the ALJ's April 17, 2019 decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II.     ALJ DECISION

Plaintiff's claim was analyzed in accordance with the five-step sequential evaluation process established under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity during the period from his alleged onset date of July 1, 2010 through his date last insured of December 31, 2013. At step two, the ALJ concluded that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine; mild stenosis of the lumbar spine; right carpal tunnel syndrome status-post carpal tunnel syndrome release; plantar fasciitis of the left foot; osteoarthritis of the left great toe; right knee dysfunction due to meniscus tear; dyslipidemia; dysfunction of the right shoulder; diabetes mellitus; hypertension; obesity; anxiety; and depression. The ALJ concluded at step three that Plaintiff's impairments, alone or in combination, do not meet or medically equal any listed impairments.

Before step four, the ALJ determined that during the relevant time period – from the alleged onset date of July 1, 2010 through the date last insured of December 31, 2013 – Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following additional limitations: Plaintiff could lift and

3

carry 20 pounds occasionally and 10 pounds frequently; could push and pull as much as could lift and carry; could sit 6 hours of an 8-hour workday, but needed to alternate to standing for 5 minutes after every 45 minutes of sitting; could stand and/or walk 6 hours out of an 8-hour workday, but needed to alternate to sitting for 10 minutes after every 45 minutes of standing and/or walking; with the bilateral upper extremities, could frequently handle, finger, reach overhead, and reach in all other directions; could frequently climb ramps and stairs, but only occasionally climb ladders, ropes, and scaffolds; could frequently balance and occasionally stoop, kneel, crouch, and crawl; could occasionally work at unprotected heights and around moving mechanical parts; could occasionally operate a commercial motor vehicle; was able to understand, carry out, remember, and perform simple routine tasks involving only simple work-related decisions with the ability to adapt only to routine workplace changes; could occasionally interact with supervisors and coworkers; could not perform tandem tasks with coworkers; and should have superficial, non-transactional contact with the general public

     At step four, the ALJ concluded that Plaintiff would be unable to perform his past relevant work as an operations manager or dispatcher. However, at step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff can perform jobs existing in significant numbers in the national economy, leading to a finding that he is not disabled under the Social Security Act.

## DISCUSSION

**I.    ALJ LEGAL STANDARD**

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step three, precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one to four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

5

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is thus limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). An ALJ's decision should be affirmed even in the absence of overwhelming evidence in support: "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence is . . . 'more than a mere scintilla.' . . . It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, (2019) (citations omitted). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

6

However, even under this relatively lenient standard, an ALJ is not absolved of her duty to support the decision with record evidence. *See Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016) ("We will uphold an ALJ's decision if it is supported by substantial evidence, but that standard is not satisfied unless the ALJ has adequately supported his conclusions."). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a plaintiff, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

### III. ANALYSIS

Plaintiff argues that the ALJ's decision was in error for several reasons, including: (1) the ALJ erred in finding that Plaintiff's impairments did not meet or equal a listing during the relevant timeframe; (2) the ALJ erred in evaluating Plaintiff's subjective symptoms; and (3) the ALJ failed to properly accommodate Plaintiff's non-exertional limitations in the RFC assessment. Each argument will be addressed below in turn.

#### A. The ALJ's Assessment of Listed Impairments

For his first argument, Plaintiff contends that the ALJ erred in finding that Plaintiff's impairments did not meet or equal any listed impairments during the relevant time period – *i.e.*, from his alleged onset date of July 1, 2010 through his date last insured of December 31, 2013. However, in reaching his determinations on the listing issue, the ALJ relied on the findings of Dr. Buckwalter, an impartial medical expert who testified at the hearing. The ALJ explained as follows:

> Dr. Buckwalter testified that after the date last insured, the claimant met listing 1.04A due to a number of operations of the lumbar and cervical spine along with having total left knee replacement in November 2018 due to meniscus tears, cartilage defect and degenerative disease. Dr. Buckwalter testified the claimant's difficulty with ambulation from the left knee, lumbar spine disease, left toe arthritis, and history of right knee disease along with plantar fasciitis of the left foot put him within the listing. Based on the evidence of record the claimant had lumbar surgery in March and October 2014, had the meniscus tear in the left knee in 2014 and began physical therapy in July 2015, [and] *July 2015 is when Dr. Buckwalter opines the claimant met listing 1.04A. To note, this finding of meeting a listing was 18 months after the claimant's date last insured.* . . .
>
> *Dr. Buckwalter further testified that prior to the date last insured [Plaintiff's] impairments individually or in combination did not meet or equal a listing.* Dr. Buckwalter mentioned that he considered listing

8

> 1.02A concerning the knee and 1.04A regarding the spine. However, Dr. Buckwalter explained the claimant did not have an extreme limitation with ambulation or functioning.

(R. 914, 921 (emphasis added, citations omitted).) For his part, Plaintiff concedes that "treatment for his numerous musculoskeletal and neurological impairments did not begin in earnest before December 2013." (Pl.'s Memo. at 11.)

The Court ultimately rejects Plaintiff's first argument. The ALJ was entitled to rely on the medical expert's opinions that Plaintiff's impairments met listing level severity after his date last insured, but not before. *See Elizabeth G. v. Kijakazi*, No. 20 C 1799, 2022 U.S. Dist. LEXIS 19633, at *22 (N.D. Ill. Feb. 3, 2022) ("The ALJ can, and did, properly rely on a medical expert opinion regarding whether a listing is met or equaled.") (citations omitted). Therefore, in relying on Dr. Buckwalter's opinions regarding listed impairments, the ALJ did not err, and the ALJ's findings are based on substantial evidence. *See Chestine G. v. Saul*, No. 18 C 4980, 2020 U.S. Dist. LEXIS 40998, at *24 (N.D. Ill. Mar. 10, 2020) ("The ALJ also reasonably relied on the medical expert's opinion when concluding that Chestine does not meet Listing 1.04 during the period beginning May 6, 2015.") (citation omitted); *Almodovar v. Astrue*, No. CV-11-9227, 2012 U.S. Dist. LEXIS 125283, at *16 (C.D. Cal. Aug. 31, 2012) ("Substantial evidence supports the AC's finding that plaintiff did not meet Listing 9.08(A) during the relevant period. Most importantly, plaintiff was not diagnosed with neuropathy until February 2012, over three years after the DLI.").[3] The Court declines Plaintiff's invitation to reweigh the

---

[3] More or less in passing, Plaintiff argues that the ALJ erred in finding that Plaintiff could frequently handle and finger. However, the ALJ's finding in that regard was also supported

9

evidence. *See Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) ("We will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it.") (citations omitted).

### B. Plaintiff's Subjective Symptoms

Plaintiff maintains that the ALJ erred in assessing his subjective symptoms. On that topic, the ALJ reasoned as follows:

> The claimant has described daily activities that are not limited to the extent one would expect given the complaints of disabling symptoms and limitations. He testified and reported he was able to care for his own personal hygiene and prepare simple meals, wash dishes, fold laundry, and performing light cleaning in the house. He reported he could pay bills, count change, handle a savings account, and use a checkbook. He further testified to attending appointments. He reported he gets along well with everyone.

(R. 925 (citations omitted).)

As an initial matter, Plaintiff's argument regarding his subjective symptoms essentially boils down to another request that this Court reweigh the medical evidence, which is forbidden. *See Gedatus*, 994 F.3d at 900. Furthermore, this Court gives "the ALJ's credibility finding special deference and will overturn it only if it is patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (internal quotations and citation omitted). With that standard in mind, the Court finds that the ALJ reasonably determined that Plaintiff's subjective symptoms were not fully corroborated. *See Atkins v. Saul*, 814 F. App'x 150, 155 (7th Cir. 2020) ("Here, the

---

by substantial evidence. The ALJ noted throughout his decision that a February 2013 consultative examination revealed that Plaintiff's "handgrip and finger grasps were normal, as were his fine and gross manipulations." (R. 919.)

10

ALJ otherwise explained his conclusion adequately. He explained that the objective medical evidence and Atkins's daily activities did not corroborate his subjective symptoms.") (citations and internal quotations omitted); *cf. Lacher v. Saul*, 830 F. App'x 476, 478 (7th Cir. 2020) ("The ALJ's rationale here was thin, but it was adequate to reflect her conclusion that the objective medical evidence and Lacher's daily activities did not corroborate his subjective symptoms."). Contrary to Plaintiff's implicit assertion, the ALJ did not err by considering Plaintiff's daily activities. *See Green v. Saul*, 781 F. App'x 522, 526 (7th Cir. 2019) ("ALJs are tasked with reviewing the evidence provided and assessing whether a claimant is exaggerating the effects of her impairments, and reviewing daily-living activities is an important part of that evaluation.") (citations omitted); *Jeske v. Saul*, 955 F.3d 583, 593 (7th Cir. 2020) (ALJ properly "considered [the claimant's] activities to determine whether her symptoms were as severe and limiting as she alleged"). Ultimately, Plaintiff has not shown that the ALJ's evaluation of his symptoms and allegations was "patently wrong," as was Plaintiff's burden. *See Horr v. Berryhill*, 743 F. App'x 16, 19–20 (7th Cir. 2018).

    C.    **<u>Concentration, Persistence, and Pace</u>**

With respect to the "paragraph B" functional area of concentration, persistence, and pace, the ALJ found that Plaintiff had a moderate limitation. Plaintiff asserts that the ALJ's RFC assessment fails to adequately account for his moderate limitation in that area. In advancing that argument, Plaintiff contends that "[l]imiting Plaintiff to simple routine tasks with simple work-related decisions

does not adequately account for his limitations in concentration, persistence, or pace." (Pl.'s Memo. at 15.) However, an ALJ's use of catchall phrases (such as "simple, routine tasks") in an RFC, without more, does not necessitate remand. *See Recha v. Saul*, 843 F.App'x 1, 4 (7th Cir. 2021) (noting that the use of boilerplate language, by itself, is not reversible error). Furthermore, crucially, Plaintiff has not articulated what sort of verbiage the ALJ should have used with respect to his asserted limitations with concentration, persistence, and pace. *See Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020) ("Although [the claimant] complains that the pace requirements are too vague, there is only so much specificity possible in crafting an RFC. The law required no more."). Accordingly, Plaintiff's challenge regarding concentration, persistence, and pace must fail. *See Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) ("It is unclear what kinds of work restrictions might address Jozefyk's limitations in concentration, persistence, or pace because he hypothesizes none.").

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to reverse the Commissioner's decision [Doc. No. 20] is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 27] is granted.

**SO ORDERED.**  **ENTERED:**

**DATE:  February 11, 2022**

**HON. MARIA VALDEZ**
**United States Magistrate Judge**

12